**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joseph Lawrence Koster, et al., | No. CV-19-01173-PHX-DJH |
| Plaintiffs, | **ORDER** |
| v. | |
| Matthew G Whitaker, et al., | |
| Defendants. | |

This matter is before the Court on Defendants' Motion to Dismiss (Doc. 44), and Plaintiffs' Motion for Summary Judgment (Doc. 46).[1] Plaintiffs filed a Response to the Motion to Dismiss and Defendants filed a Reply. (Docs. 45 and 48). Defendants filed a Response to the Motion for Summary Judgment and Plaintiffs filed a Reply. (Docs. 49 and 51). These matters are fully briefed and the Court now issues its ruling.

**I.  Background[2]**

The relevant background facts are not disputed.

**A.  Vacancy of the U.S. Attorney General**

On November 7, 2018, Attorney General ("AG") Jeff Sessions resigned his office. At that time, Deputy AG Rod Rosenstein automatically succeeded as the Acting AG by operation of the Attorney General Succession Statute. 28 U.S.C. § 508(a). Thereafter,

---

[1] Oral argument was requested by all parties. The Court denies the requests because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed.R.Civ.P. 78(b) (court may decide motions without oral hearings); LRCiv 7.2(f) (same).

[2] Many of the facts herein come from generally known facts and public records.

President Trump ("the President") invoked the provisions of the Federal Vacancies Reform Act of 1998 ("FVRA") to override the Attorney General Succession Statute and appointed Matthew Whitaker to be Acting AG. The FVRA explicitly authorizes the President to designate an officer or employee in an executive agency to serve temporarily as the head of the agency in an acting capacity.[3] 5 U.S.C. § 3345 (a)(3). Matthew Whitaker was an employee of the agency and former chief of staff to AG Sessions.

### B. The Bump-Stock Ban

In October 2017, a gunman armed with guns fitted with bump-stock-style devices[4] killed 58 people and wounded over 400 others at an outdoor concert in Las Vegas, Nevada. As a result of the shooting, and on the President's directive, Acting AG Whitaker promulgated a rule classifying bump-stock devices as machine guns under the National Firearms Act, thereby making their possession illegal. *See* Bump-Stock-Type Devices, 83 Fed. Reg. 66,514 (Dec. 26, 2018) ("Bump-Stock Rule" or the "Rule"). The Rule was promulgated by Acting AG Whitaker on December 18, 2018, and published in the Federal Register on December 26, 2018. The Bump-Stock Rule banned all bump-stock devices, and prohibited the possession, transfer, and sale of those devices. The Rule also required individuals who possessed these devices to either destroy them or turn them over to the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") by March 26, 2019, or face potential criminal charges. *See id.*

The President subsequently appointed William Barr to be AG, and he was so confirmed by the United States Senate on February 15, 2019. On February 20, 2019, five

---

[3] The FVRA also provides that the employee or officer must have been employed by the agency for not less than 90 days in the preceding 365-days, and that the individual's rate of pay be equal or greater to the GS-15 level of the United States General Schedule compensation table. 5 U.S.C. § 3345 (a)(3). The parties do not dispute that Whitaker met these statutory requirements.

[4] A "bump-stock" is a firearm attachment that allows a firearm to fire continuous rounds with a single pull of the trigger, effectively making it a machine gun. Bump-Stock-Type Devices, 83 Fed. Reg. 66514-01 (Dec. 26, 2018). "Machine gun" is defined as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b).

days after Barr was sworn in, Plaintiffs filed a Complaint arguing that the Bump-Stock Rule, as promulgated by Whitaker, was unconstitutional. (Doc. 1). Three weeks later, on March 14, 2019, AG Barr ratified the Bump-Stock Rule. Plaintiffs then filed an Amended Complaint[5] which no longer argued that the Rule was invalid. (Doc. 36).

### C. Plaintiffs' Complaint[6]

Plaintiffs Joseph Koster and Jacob Soling are two Arizona residents who owned "bump-stock-type devices" as defined by the Bump-Stock Rule. (Doc. 36 at 4). Both Plaintiffs turned over their devices to ATF within the timeframe required by the Bump-Stock Rule. (*Id.*) Plaintiffs have sued Thomas Brandon, Acting Director of ATF, former Acting AG Matthew Whitaker, current AG William Barr, and the United States of America. (Doc. 36). Plaintiffs' initial Complaint sought preliminary injunctive relief, arguing that the Court declare Acting AG Whitaker's appointment unconstitutional, declare that Whitaker lacked authority to promulgate the Bump-Stock Rule, and enjoin the Bump-Stock Rule from taking effect. (Doc. 1).

Plaintiffs' Second Amended Complaint ("SAC") now alleges the President violated the Appointments Clause by appointing Whitaker pursuant to "an explicit executive policy of using the FVRA to designate an employee" to serve as a "principal officer," ["policy"] rather than to allow the AG Office's succession provisions to take effect. (Doc. 36 at 5). According to Plaintiffs, this unconstitutional "policy" was endorsed by the Office of Legal Counsel in 2003.[7] (Doc. 36 at 5). Plaintiffs ask this Court to enjoin the government's alleged "policy" of appointing non-Senate confirmed individuals to head executive

---

[5] Plaintiffs filed an Amended Complaint (Doc. 31) which was not in compliance with LRCiv 15.1(b) because it was not accompanied by a "Notice of Amended Pleading." Following the issuance of a deficiency notice (Doc. 33), Plaintiffs refiled the Complaint as the "Second Amended Complaint." (Doc. 36).

[6] Plaintiffs' attorneys also filed cases in other Federal District Courts throughout the country, alleging similar facts and counts in the various complaints.

[7] Although Plaintiffs allege that the President has complete authority to execute the alleged "policy," they do not name the President in this lawsuit. Rather, they seek to enjoin and declare "the government's policy of using the FVRA" unconstitutional. (Doc. 36 at 8-9). Relatedly, Defendants contend that the Court lacks jurisdiction to bind the President in the exercise of his statutory authority. (Doc. 44-1 at 8).

1  agencies, and to declare that using the FVRA to appoint a non-Senate confirmed individual
2  to temporarily lead an executive department when there is an agency-specific succession
3  statute in place is unconstitutional. (*Id.*) Plaintiffs also seek declaratory relief that the
4  Bump-Stock Rule was illegal on December 18, 2018 when issued by Acting AG Whitaker
5  because he was not constitutionally or statutorily authorized to do so. Although Plaintiffs
6  acknowledge that, once ratified by Barr, the Rule was valid, they claim a deprivation of
7  their right to alienate their property and thus argue they suffered harmed from the Rule's
8  inception until AG Barr ratified it. Plaintiffs do not seek compensatory damages for their
9  lost property.

Defendants argue that this Court lacks jurisdiction over Plaintiffs' claimed unconstitutional use of a "policy" by the President because Plaintiffs have no redressable injury from that "policy," nor can an injury be traceable to Defendants. (Doc. 44-1 at 1). Defendants also argue that a declaration that the Bump-Stock Rule was illegal when promulgated would not redress any presumed injury because its subsequent ratification validated the Rule. (*Id.*) Thus, Defendants seek to dismiss Plaintiffs' SAC for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), or alternatively, 12(b)(6) because the SAC fails to state a claim upon which this Court may grant relief. (Doc. 44 at 2). Ultimately, Defendants argue that there is no case or controversy before the Court.

**II.    Legal Standards**

    **A.    Rule 12(b)(1) and 12(b)(6)**

Rule 12(b)(1) requires a court to dismiss claims over which it lacks subject-matter jurisdiction. A Rule 12(b)(1) challenge may be either facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, the court may dismiss a complaint when the allegations of and documents attached to the complaint are insufficient to confer subject-matter jurisdiction. *See Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). In this context, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir.

1996). In contrast, when a court evaluates a factual challenge to jurisdiction, a court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Safe Air for Everyone*, 373 F.3d at 1039 ("In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment.").

Under Rule 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. In other words, while courts do not require heightened fact pleading of specifics, a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555.

### B. Article III Standing

Article III provides that federal courts may only exercise judicial power in the context of "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1; *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992). For there to be a case or controversy, the plaintiff must have standing to sue. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) ("*Spokeo II*"). Whether a plaintiff has standing presents a "threshold question in every federal case [because it determines] the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). A suit brought by a plaintiff without Article III standing is not a "case or controversy," and an Article III federal court therefore lacks subject matter jurisdiction over the suit. *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 101 (1998). In that event, the case must be dismissed pursuant to Rule 12(b)(1). *Id.*

To establish standing, plaintiffs seeking the jurisdiction of a federal court have the burden of clearly demonstrating that they have: "(1) suffered an injury in fact, (2) that is

fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo II,* 136 S. Ct. at 1547 (quoting *Warth*, 422 U.S. at 518); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (noting the party asserting jurisdiction bears the burden of establishing subject matter jurisdiction on a Rule 12(b)(1) motion to dismiss). Moreover, "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester, N.Y. v. Laroe Estates, Inc*., 137 S. Ct. 1645, 1650 (2017). The Court is also mindful that the standing review be rigorous when, as here, "reaching the merits of the dispute would force [the court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Raines v. Byrd*, 521 U.S. 811, 819-20 (1997). With these principles in mind, the Court will examine the sufficiency of Plaintiffs' SAC.

### III. Analysis

Plaintiffs' SAC seeks injunctive and declaratory relief. Plaintiffs allege that the government has a "policy" of temporarily appointing non-Senate confirmed government employees to act as principal officers of executive agencies. They argue that this "policy" unconstitutionally violates the Appointments Clause by elevating a non-Senate confirmed person to a position that ordinarily requires Senate confirmation. Plaintiffs also seek a declaration from the Court that Whitaker's appointment was unconstitutional and that they were harmed between the date he issued the Bump-Stock Rule on December 18, 2018, and the Rule's ratification on March 14, 2019. Although the Court accepts all material facts alleged as true, Plaintiffs now bear the burden to clearly show that they have standing for each of their alleged claims.

#### A. Injunction Against the FVRA "Policy"

Plaintiffs first argue that the Court need not address standing, because they had Article III standing when they filed their initial Complaint. (Doc. 45 at 7) ("All agree that this Court has Article III power over the case based on the Rule."). They argue that the Court should only examine whether it retains jurisdiction over the claim after ratification.

They argue that the Court must resolve their Appointments Clause challenge on the merits because AG Barr's appointment, confirmation, and ratification of the Bump-Stock Rule "can only fairly be regarded as attempts to moot this case." (*Id.*) Plaintiffs fail to comprehend that they withdrew their initial Complaint in its entirety when they filed an amended complaint. *See Lacey v. Maricopa County*, 693 F.3d 896, 927 (9th Cir. 2012) (*en banc*) ("[A]n amended complaint supersedes the original complaint and renders it without legal effect[.]"). The SAC alleges new claims; therefore, the Court must determine whether Plaintiffs satisfy the Article III Standing requirements for the claims advanced in their SAC.

As explained below, the Court concludes that Plaintiffs do not have standing and the Motion to Dismiss will be granted.

### 1. Legal Standard - Actual and Impending Harm

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 341 (2006). To establish injury in fact for purposes of Article III Standing, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo,* 136 S. Ct. at 1548 (*quoting Lujan,* 504 U.S., at 560). "When we have used the adjective 'concrete, we have meant to convey the usual meaning of the term—'real,' and not 'abstract.'" *Id.* Moreover, "[a]lthough imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is certainly impending." *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 409 (2013).

### 2. Analysis

In seeking injunctive relief, Plaintiffs allege an imminent future injury based on the President's alleged FVRA "policy." They allege that "it is highly likely that another invalidly acting official will soon be in a position to issue regulations that affect Plaintiffs.

Moreover, it is likely that such acting official will promulgate gun control regulations[.]" (Doc. 45 at 19). They further allege that their risk of injury is imminent because there is high turnover in high-level positions in the current Administration and that the President likes using acting officers. (*Id.*) They request an injunction, preventing the President from using the FVRA in this way. Defendants argue that Plaintiffs' allegations are far too speculative to form a concrete injury to establish Article III Standing. The Court agrees.

Plaintiffs' claimed imminent injury would require numerous events to occur, including, at the very least: (1) a vacancy in an executive department that requires a Presidential appointment and Senate confirmation; (2) the vacancy occurs in an agency subject to an agency-specific succession statute; (3) that agency has the authority to issue gun-control regulations; (4) the individual in the agency-specific succession statute would be able to serve; (5) notwithstanding the agency-specific statute, the President would invoke the FVRA to appoint a non-Senate confirmed employee of the agency to serve as the acting head of that agency; (6) the acting head would exercise the discretion to promulgate gun regulations; and (7) those gun regulations would negatively impact these named Plaintiffs. Essentially, Plaintiffs' alleged injury is premised on a "hypothetical vacancy in a hypothetical office wherein a hypothetical acting officer promulgates some hypothetical future regulation." *Firearms Policy Coal., Inc. v. Barr*, 2019 WL 5653684, at *5 (D.D.C. Oct. 31, 2019). These hypothetical injuries are of the type to be avoided when determining standing. *See Clapper*, 568 U.S. at 410 (holding that "imminence . . . cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative"); *see also Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives,* 920 F.3d 1, 15 (D.C. Cir. 2019) ("To assume that (i) the Attorney General would have to leave office; (ii) the President would then have to appoint a mere employee in his stead . . .; (iii) that the new Acting Attorney General would then have to promulgate a legislative rule; and (iv) by sheer coincidence, that rule would have to adversely affect . . . plaintiffs' legal rights" would be "quixotic speculation"). This Court will not "endorse standing theories that require guesswork as to how independent decisionmakers will exercise their

judgment." *See Clapper*, 568 U.S. at 414. Plaintiffs' argument that the President "likes" using acting officers because he can "move so quickly" and gives him "more flexibility" is not persuasive, and does nothing to convince the Court that Plaintiffs' alleged injury is "certainly impending." *Id.* at 409.

Plaintiffs' argument that the Court must examine their allegations under an exception to the mootness doctrine also fails. For a matter to fit within the "capable of repetition yet evading review" exception, there must be a "reasonable expectation" that the same plaintiff will be subject to the same injury again, and the injury suffered must be limited in duration such that it is likely always to become moot before federal court litigation is completed. *See Weinstein v. Bradford*, 423 U.S. 147, 149 (1975). While Plaintiffs have not established that there is an impending injury, Plaintiffs' argument with respect to this conduct evading judicial review is equally unavailing. Plaintiffs cannot establish that the temporary appointment under the FVRA is a matter that evades judicial review, as numerous courts across the country have addressed the constitutionality of Mr. Whitaker's appointment *while he was still in office*. *See e.g., Guedes*, 356 F. Supp. 3d 109; *United States v. Santos-Caporal*, 2019 WL 468795 (E.D. Mo. Jan. 9, 2019); *United States v. Smith*, 2018 WL 6834712 (W.D.N.C. Dec. 28, 2018); *United States v. Peters*, 2018 WL 6313534 (E.D. Ky. Dec. 3, 2018); *United States v. Valencia*, 2018 WL 6182755 (W.D. Tex. Nov. 27, 2018).

Simply put, Plaintiffs' theories of future injury based on the "administration's policy" is far from concrete. Rather, it is extremely malleable because it relies on impermissible speculation and assumption. There is no reasonable expectation that the alleged injury will recur. "Federal courts are not authorized to address such theoretical possibilities." *Native Vill. of Noatak v. Blatchford*, 38 F.3d 1505, 1509–10 (9th Cir. 1994). Plaintiffs have not met their burden of establishing an imminent injury in fact and no exception applies. Therefore, this claim must be dismissed.

**B.    Declaratory Judgment of Past Harm**

In their second claim, Plaintiffs seek a number of declarations from this Court

related to a claimed deprivation of rights to alienate their property from the date the Bump-Stock Rule was promulgated on December 18, 2018, to the date of AG Barr's ratification on March 14, 2019. (Doc. 36 at 7-8). Plaintiffs ask the Court to declare that the Rule was unlawful between the date of its promulgation and its ratification. They argue that AG Barr's ratification does not cure the harm they sustained. They seek a declaration that Whitaker's appointment was unconstitutional and that the President's "policy" of appointing non-Senate confirmed employees to act as interim agency heads violates the Appointments Clause of the Constitution. (*Id.*) Lastly, they ask the Court to declare that the provisions of the FVRA that allow the President to bypass the office-specific succession statutes are unconstitutional. (Doc. 45). The Court declines to reach these issues.

### 1.     Legal Standard - Redressability

"Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). That is, "where the plaintiffs seek declaratory and injunctive relief, past injuries alone are insufficient to establish standing." *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011); *citing Los Angeles v. Lyons,* 461 U.S. 95, 105 (1983). Rather, an "injury in fact" must be pleaded that the Court can redress with a ruling in favor of plaintiff. *Spokeo II,* 136 S. Ct. at 1547. "Satisfaction of this requirement ensures that the lawsuit does not entail the issuance of an advisory opinion without the possibility of any judicial relief, and that the exercise of a court's remedial powers will actually redress the alleged injury." *Lyons*, 461 U.S. at 129.

### 2.     Analysis

Plaintiffs ask the Court to declare that Whitaker's appointment violated the Appointments Clause and that they were harmed when he promulgated the Bump-Stock Rule in his Acting capacity. The Court will not address the merits of these claims because Plaintiffs have not established that there is a likelihood of imminent future injury. Moreover, the past injuries alleged, standing alone, are insufficient to establish standing.

1  *See Dearth*, 641 F.3d at 501, *citing Lyons,* 461 U.S. at 105. Therefore, the Court is without jurisdiction to issue the relief they desire.

Assuming Plaintiffs had established a concrete injury, they fail to establish that a declaratory judgment in their favor would redress their alleged past harm. A declaration from this Court would not allow Plaintiffs the ability to alienate their bump stocks because Plaintiffs have turned them over to ATF. Moreover, Plaintiffs concede that the Rule is now valid and they do not seek compensatory damages for their lost property. *See Seven Words LLC v. Network Solutions*, 260 F.3d 1089, 1095 (9th Cir. 2001) (finding a declaration would be unlawful advisory opinion where plaintiff "never sought damages"). Without redressability, issuing a declaration in Plaintiff's favor would result in an advisory opinion on past conduct. This is expressly prohibited. *See Lyons*, 461 U.S. at 129; *see also Ashcroft v. Mattis*, 431 U.S. 171, 172-73 (1977) (holding that plaintiff had not satisfied standing requirements where "present interest in the controversy is that [plaintiff] will obtain emotional satisfaction from a ruling"). Plaintiffs have not clearly demonstrated a likelihood of imminent future harm, nor have they established that a declaration from the Court would redress their past injuries. Therefore, Plaintiffs do not have standing and the Court will dismiss this claim.

## IV. Conclusion

For the reasons stated herein, Defendants' Motion to Dismiss is granted and this case will be closed. Accordingly, the Court's Order obviates the need to address Plaintiffs' Motion for Summary Judgment.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Doc. 44) is **granted.**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment (Doc. 46) is **denied as moot**.

…

…

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly and terminate this matter.

Dated this 4th day of December, 2019.

_____
Honorable Diane J. Humetewa
United States District Judge